# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RONALD G. BENTLEY | § | |
| | § | |
| V. | § | CASE NO. 4:05cv211 |
| | § | (Judge Schell/Judge Bush) |
| Commissioner of Social | § | |
| Security Administration | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying his claim for Disability Insurance Benefits and Supplemental Security Income. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be AFFIRMED.

### HISTORY OF THE CASE

Plaintiff originally filed applications for Disability Insurance Benefits and Supplemental Security Income on February 4, 2003, alleging inability to work since August 1, 2002 due to heart attacks, high blood pressure, diabetes, and high cholesterol. The applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing, the ALJ issued an unfavorable decision on November 8, 2004. Plaintiff subsequently requested that the Appeals Council conduct a review. The Appeals Council denied Plaintiff's request on April 1, 2005. Therefore, the decision of the ALJ

became the final decision of the Commissioner. Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

At the time of the ALJ hearing, Plaintiff was 54 years old. He has an 11th grade education and has received his GED. According to the ALJ, Plaintiff presented the following factual history:

> The claimant had a stent placed in his heart in 2000 but did well until 2002. In February 2002, the claimant had a myocardial infarction and cardiac catheterization showed coronary artery disease. In May 2002, the claimant was released to return to work with the exception of doing strenuous activity. Exhibit 4F/106. In August 2002, chest x-rays were negative (Exhibit 1F/6) and testing showed an ejection fraction of 62 percent, and he did not have any wall motion abnormalities. Exhibit 4F/169. These tests do not show a heart impairment that would prevent the claimant from working.
>
> He did not have any complaints until December 2002. Exhibit 4F/168-69. Most of the record deals with December 2002. On December 10, 2002, the claimant had an exercise tolerance test which did not show any EKG changes. After tests were performed, the doctor's impression was ischemic heart disease manifested by acute non Q-wave myocardial infarction and status post a stent three years previously, obesity, and non-insulin dependent diabetes mellitus. Exhibit 2F/36. The discharge diagnosis was a small non Q-wave myocardial infarction secondary to circumflex disease, now improved. Exhibit 2F/38. Testing in June 2003 showed an ejection fraction of 58% and adequate wall motion. Exhibit 5F/191.
>
> The medical expert, Dr. Freeman, testified the claimant did not have a history of neuropathy, [had] no record of root swelling, [had] no pulmonary function studies tests, and [had] no kidney functioning problem in the record. He had stents placed in his heart in 2000 and again in 2002. A stress test in June 2004 did not show any change since June 2002, and that stress test did not show any abnormalities. The claimant does not have congestive heart failure. He has uncontrolled diabetes as times, and Dr. Freeman opined the claimant could not do any heavy lifting but has a residual functional capacity for performing light activity with the ability to lift 25 pounds frequently and 50 pounds

occasionally; stand, sit, and walk 6 hours in an 8-hour workday as long as the work is in a controlled environment and he does not operate dangerous equipment....

The claimant testified at the hearing as follows: He has had 3 [or] 4 heart attacks. He lives alone in a trailer, cooks, and goes to his mother's each day. He has a problem walking more than one city block or he gets out of breath and has chest pain. He takes nitro two or three times a day. He does not do yard/garden work and it takes him longer to do things. He has a problem sleeping and takes medication, but this does not help. He watches television, sits outside, [and] tries to stay awake. He hates cold and heat. He can sit for 30 minutes but his feet hurt and his hands go numb. His feet swell so he usually does not wear shoes. He can lift a can of coffee. He cannot do his past relevant work because he cannot climb. He was diagnosed with diabetes in 1998 and takes pills and insulin. He also has experienced high blood pressure and is on prescribed medication. He takes a baby aspirin each day. He has chest pain every day and stress makes it worse. His diabetes is not under control and he has vision problems. He also have emphysema and has to rest after exertion. He even has to rest after taking a shower. He gets sleepy after taking his medication. He cannot stand cold and cannot breathe in heat. He cannot do sedentary work because he would get tired after 30-40 minutes and cannot do an 8-hour job.

(T.R. 15-16).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

After considering the record, the ALJ made the prescribed sequential evaluation.

The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has coronary artery disease, status post two stents

in the heart, insulin dependent diabetes, and hypertension, [which] are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The [ALJ] finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the [ALJ's] decision.

6. The claimant has the following residual functional capacity: light work with the ability to lift 25 pounds occasionally and 50 pounds frequently, and work must be in a controlled environment and not involve operating dangerous equipment.

7. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant is an "individual closely approaching advanced age" (20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant has a "high school (or high school equivalent) education" (20 C.F.R. §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as light assembler of small parts (DOT 706.684 022) of which there are 500,000 jobs in the United States and 27,000 in Texas, laundry worker (DOT 361.685 018) of which there [are] 41,000 jobs in the United States and 3,000 in Texas, and order puller (DOT 922.687 058) of which there are 72,000 jobs in the United States and 2000 in Texas.

    13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(TR 19-20).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings, *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1983), and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir. 1981); *see* 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, *Chaney v. Califano*, 588 F.2d 958, 959, (5th Cir. 1979), and conflicts in the evidence are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

To establish disability, Plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant, who at the time of his disability claim, is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff raises the following two issues on appeal: (1) whether the Commissioner's decisions and findings of fact are supported by substantial evidence; and (2) whether the ALJ and the Appeals Council properly evaluated the medical evidence. Plaintiff devotes most of his argument and brief to his allegation that the appeals council failed to consider new and material evidence.

Plaintiff suggests that the ALJ committed error because he did not consider all

of the medical records in his decision. The record contains over 360 pages of medical records. While the ALJ does not specifically mention every single medical record or piece of evidence he considered to render his opinion, the ALJ's decision shows that he properly considered all of the medical records submitted by Plaintiff, including the medical records initially submitted to the ALJ and subsequently resubmitted to the Appeals Council. The evidence shows that Plaintiff's physicians diagnosed Plaintiff with coronary artery disease, status post two stents in the heart, insulin dependent diabetes, and hypertension, which the ALJ incorporated in his findings.

Plaintiff specifically argues that the Appeals Council did not provide any specific comment regarding medical records resubmitted by Plaintiff, and that the failure to consider the evidence led to an improper decision. The Regulations provide specific guidance on cases the Appeals Council will review. The Appeals Council will review an ALJ's decision when there is an abuse of discretion by the ALJ, when there is an error of law, when the decision is not supported by substantial evidence, when there is an issue involving the general public interest, or when new and material evidence is submitted. *See* 20 C.F.R. §§ 404.970, 416.1470. Plaintiff's resubmission of new evidence fails to satisfy any of these criteria.

Plaintiff specifically argues that the ALJ committed error by not considering new evidence submitted to the Appeals Council. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). The Fifth Circuit previously held that "'[i]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding.'" *Leggett v. Chater*, 67 F.3d 558, 566-567 (5th Cir. 1995) (quoting *Bradley v. Bowen*, 809 F.2d

7

1054,1058 (5th Cir. 1987)).

In this case, the evidence shows that Plaintiff submitted to the ALJ the same medical evidence he now suggests was initially submitted to the Appeals Council. In a letter dated December 29, 2004, Plaintiff's counsel specifically admits that the medical records were submitted to the ALJ prior to the date the ALJ issued his administrative decision (T.R. 355). Specifically, the December 29, 2004 letter states as follows:

> The medical report for the May 14, 2004 catherization was submitted subsequent to the hearing, but was not listed as evidence in the decision. Subsequent VA medical reports were submitted at the hearing but were not listed as evidence. These records are being resubmitted with this appeal.

(*Id.*). By Plaintiff's counsel's own admission, the medical records were initially submitted to the ALJ and subsequently resubmitted to the Appeals Council, which shows that the medical records resubmitted to the Appeals Council were not new evidence. Thus, Plaintiff has not met the Fifth Circuit requirement that evidence submitted to the Appeals Council must be new and material to justify remand. *Leggett*, 67 F.3d at 566-567.

The resubmitted medical evidence is the same as evidence supporting the ALJ's decision of "no disability." The resubmitted evidence includes treatment notes from North Texas HCS, dated from October 2003 through April 2004, and from Hopkins County Memorial Hospital, dated from June 2003 through May 2004. The evidence of record shows that above-mentioned resubmitted medical evidence was evaluated and discussed during the administrative hearing and in the ALJ's decision. The latest medical record resubmitted by Plaintiff is dated May 2004, and the administrative

8

hearing was conducted on October 4, 2004, which indicates that the medical records were available at the time of the administrative hearing. Testimony from the administrative hearing confirms that the resubmitted medical evidence was initially submitted and considered by the ALJ in rendering his decision. At the administrative hearing, while questioning the medical expert, the ALJ noted as follows: "I have in my file here Exhibits 1 to 7F plus quite a bit that's been evidently submitted since then. . . . This is the latest I guess that's been handed in, so in effect you've had a chance to see all the medical exhibits. Is that right?" (T.R. 529). The evidence shows that a medical expert discussed and considered the resubmitted medical evidence in rendering his medical opinion. During the administrative hearing, the medical expert testified as follows: "[Plaintiff's] most recent stress test that I have a record of is from June 14, [20]04" (T.R. 435-36, 532). The evidence shows that Plaintiff's counsel questioned the medical expert regarding medical records that were resubmitted to the Appeals Council as new evidence. During the administrative hearing, Plaintiff's counsel asked the medical expert the following: "Dr. Freeman (the medical expert), in October of 2003, did the claimant have a 70 percent occlusion of his LAD? It's on page 58 of the last . . . ." (T.R. 461, 535). In his decision, the ALJ cites June 2004 medical records to support his decision.

The evidence shows that the ALJ's decision was based on all the evidence of record, including the resubmitted medical evidence. The evidence shows that the ALJ assigned significant weight to the medical expert's opinion. The evidence shows that the medical expert's opinion accounted for the medical records initially submitted to the ALJ and subsequently resubmitted to the Appeals Council. In response to

9

questions from Plaintiff's counsel, the medical expert testified that considering the resubmitted medical records, it was his opinion that Plaintiff would be limited to light rather than heavy work. The medical expert supported his opinion by noting that the subsequent medical records show that Plaintiff was "discharged on all [hospitalizations] with no cardiac reason found for his chest pain."

In order to justify a remand, Plaintiff must present new and material evidence, and good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett*, 67 F.3d at 567. There must be "a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner]'s determination had it been before him." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (citations omitted). In this case, Plaintiff failed to demonstrate reversible error, as he did not submit new evidence subject to Appeals Council review. Thus, Plaintiff's request that the ALJ's decision be reversed or remanded because the Appeals Council did not consider newly submitted evidence must be denied.

**Plaintiff Failed To Establish That He Had An Impairment, Or Combination Of Impairments, That Equal A Listing.**

Plaintiff alleges error in that the ALJ did not find that his impairment or combination of impairments medically equal a listing under Appendix 1, Subpart P, Regulations No. 4. The burden of proof is on Plaintiff to establish that his impairments meet or equal a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990). In order to meet a listing, the impairment must meet all the specified criteria. *Sullivan*, 493 U.S. at 530. "An impairment that manifests only some of these criteria, no matter

how severely, does not qualify." *Id*. Medical equivalence must be based on medical findings. *See* 20 C.F.R. §§ 404.1526(b), 416.926(b). The claimant "must present medical findings equal in severity to all the criteria for the one most similarly listed impairment." *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995). However, Plaintiff does not mention how the medical evidence supports his allegation that the medical findings are equal in severity to all the criteria of the listing. When a plaintiff fails to direct either the Court or the defendant to those portions of the record that support his point, the plaintiff waives that complaint. *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). Plaintiff, not the ALJ, has the burden of proof to present evidence meeting all the requirements of a listing. *Sullivan*, 493 U.S. at 530-531.

## RECOMMENDATION

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be AFFIRMED.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) *en banc*.

**SIGNED this 4th day of January, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE